IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL RUSSELL ANDREWS, | : | Civil No. 1:22-CV-00077 |
| Plaintiff, | : | |
| v. | : | |
| PENNSYLVANIA DEPARMENT OF CORRECTIONS STAFF, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion for summary judgment filed by the remaining Defendants in this action. For the following reasons, the court will grant the motion, enter judgment in favor of Defendants, and close the case.

### BACKGROUND AND PROCEDURAL HISTORY

Daniel Russell Andrews ("Plaintiff") is a self-represented individual who is presently housed at the State Correctional Institution in Frackville, Pennsylvania ("SCI-Frackville"). He filed a complaint on January 14, 2022, alleging constitutional violations that occurred during the time he was incarcerated at SCI-Huntingdon. The complaint named seven defendants: (1) J. Spyker ("Spyker"), an employee at SCI-Huntingdon who was the Correctional Coordinator Program Manager (CCPM) at the time of the incident giving rise to the complaint; (2) Correctional Officer III Grassmyer[1] ("Grassmyer"), a correctional officer with the

---

[1] This Defendant is identified as "Grassmire" in the amended complaint. (Doc. 28.)

1

Pennsylvania Department of Corrections ("DOC"); (3) Correctional Officer III McCloskey[2] ("McCloskey") a correctional officer with the Pennsylvania DOC; (4) Ms. Hammon ("Hammon"), the librarian assistant employed at SCI-Huntingdon; (5) Correctional Officer I Frye ("Frye"), a correctional officer with the Pennsylvania DOC; (6) Ellenberger, hearing examiner; and (7) Connie Greene ("Greene"), grievance coordinator at SCI-Huntingdon.  (Doc. 1.)

Defendants filed a motion to dismiss on May 2, 2022.  (Doc. 14.)  On June 16, 2022, Plaintiff was transferred to SCI-Frackville.  (Doc. 20.)  Defendants filed an amended motion on June 24, 2022.  (Doc. 18.)  Following briefing, the court granted the motions in part, dismissed all claims except the First Amendment claim against Defendants Hammon, Frye, Grassmyer, McCloskey, and Spyker and the Eighth Amendment claim against Defendant Hammon, and granted Plaintiff leave to amend.  (Docs. 22, 23.)

On December 1, 2022, Plaintiff filed an amended complaint that attempted to replead claims that the court had previously dismissed with prejudice and attempted to join a new party to the action.  (Doc. 28.)  This is the operative complaint in the matter.  On December 21, 2022, the court screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and dismissed all claims

---

[2] This Defendant is identified as "McClosky" in the amended complaint.  (Doc. 28.)

except the First Amendment claim against Defendants Hammon, Frye, Grassmyer, McCloskey, and Spyker and the Eighth Amendment claim against Defendant Hammon. (Doc. 33.) The remaining Defendants answered the complaint on January 20, 2023. (Doc. 36.) The parties have completed fact discovery and Defendants filed a motion for summary judgment, a statement of facts, and a brief in support. (Docs. 65, 66, 67.) Plaintiff filed a brief in opposition and answer to statement of facts on March 8, 2024. (Docs. 72, 73.) Defendants filed a reply on March 22, 2024. (Doc. 74.) The court will now address the pending motion for summary judgment.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Huntingdon, located in Cumberland County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of

the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'"  *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Summary of Undisputed Facts

Plaintiff was incarcerated at SCI-Huntingdon from January of 2020 until July of 2020.  (Doc. 66, ¶ 1; Doc. 73, ¶ 1.)  Plaintiff was in the law library at SCI Huntingdon on January 16, 2020 between 7:45 p.m. and 8:00 p.m.  (Doc. 66, ¶ 4;

5

Doc. 66-2, p. 13; Doc. 73 ¶ 4.)[3] He asked Inmate Guy Bicking ("Bicking") for help with the computer in the law library. (Doc. 66, ¶ 5; Doc. 66-2, pp. 13, 19; Doc. 73, ¶ 5.) While working in the law library, Bicking told Plaintiff to "suck my penis" and something along the nature of "I would F you up." (Doc. 66, ¶ 6; 66-2, pp. 20, 29; Doc. 73, ¶ 6.) Bicking did not show his genitals to Plaintiff or physically touch Plaintiff on January 16, 2020. (Doc. 66, ¶¶ 7–8; Doc. 66-2, pp. 29–30; Doc. 66-6, p. 2; Doc. 73, ¶¶ 7–8.) After Bicking's comments, Plaintiff went to print out his legal work with Defendant Hammon and returned to his housing unit. (Doc. 66, ¶ 10; Doc. 66-2, pp. 31–32; Doc. 73, ¶ 10.) Plaintiff did not tell Defendant Hammon about Bicking's comment on January 16, 2020. (Doc. 66, ¶ 9; Doc. 66-2, pp. 41–43; Doc. 73, ¶ 9.)

After returning to his housing unit, Plaintiff asked to speak with a lieutenant to file a Prison Rape Elimination Act ("PREA") claim. (Doc. 66, ¶ 13; Doc. 66-2, p. 43–44; Doc. 73, ¶ 13.) Plaintiff spoke with Lieutenant Maxwell about his PREA allegation against Bicking. (Doc. 66, ¶ 14; Doc. 66-6; Doc. 73, ¶ 14.) Defendant Grassmyer interviewed Plaintiff about his PREA claim against Bicking on January 17, 2020. (Doc. 66, ¶ 29; Doc. 66-2, p. 58; Doc. 66-7; Doc. 73, ¶ 29.) Defendant Spyker was present during the PREA interview with Defendant Grassmyer. (Doc. 66, ¶ 30; Doc. 66-2, p. 58; Doc. 73, ¶ 30.) Both Plaintiff and Bicking provided

---

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

written statements as part of the PREA investigation. (Doc. 66, ¶¶ 31–32; Doc. 66-9; Doc. 66-11; Doc. 73, ¶¶ 31–32.) Bicking's written statement denies that he told Plaintiff to "suck his dick." (Doc. 66, ¶ 33; Doc. 66-11; Doc. 73, ¶ 33.)

Prior to January 16, 2020, Plaintiff knew of Bicking and had interacted with him if he had an issue or didn't understand something in the library. (Doc. 66-2, p. 18.) Prior to January 16, 2020, Bicking had not threatened or physically attacked Plaintiff. (Doc. 66-2, p. 19.) Bicking never lived on Plaintiff's housing unit. (Doc. 66, ¶ 12; Doc. 66-2, p. 44; Doc. 73, ¶ 12.) After January 16, 2020, Plaintiff did not have any further conversations with Bicking. (Doc. 66, ¶ 26; Doc. 66-2, p. 35.)

Prior to January 16, 2020, Plaintiff did not file any inmate grievances against Defendants Grassmyer, Spyker, Hammon, and Frye, nor did he file any civil rights complaints against them. (Doc. 66, ¶¶ 24–25; Doc. 66-2, p. 9; Doc. 73, ¶¶ 24–25.)

Defendant Hammon filed an inmate misconduct report in number D233438 on January 17, 2020 stemming from the January 16, 2020 incident with Bicking. (Doc. 66, ¶¶ 35–36; Doc. 66-3, Doc. 73, ¶¶ 35–36.) The misconduct was upheld at all levels of appeal. (Doc. 66, ¶ 39; Doc. 66-3; Doc. 73, ¶ 39.)

Defendant Frye filed an inmate misconduct report in number D359189 against Plaintiff on January 17, 2020 concerning a threat made by Plaintiff towards Defendant Grassmyer. (Doc. 66, ¶¶ 41–42; Doc. 66-4; Doc. 73, ¶¶ 41–42.) This

misconduct was upheld at all levels of appeal. (Doc. 66, ¶ 44; Doc. 66-4; Doc. 73, ¶ 44.)

### B. The Request for Compensatory Damages Is Stricken, But Plaintiff Properly Pleaded Punitive Damages in the Amended Complaint.

Defendants seek all claims be dismissed because Plaintiff has failed to allege a physical injury in the amended complaint. (Doc. 67, pp. 4–5.) In the reply briefing, Defendants also allege that Plaintiff failed to plead punitive damages in the amended complaint. (Doc. 74, p. 5.)

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, restricts a prisoner's ability to recover compensatory damages for solely mental and emotional injuries. "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Third Circuit Court of Appeals held that to satisfy § 1997e(e)'s physical injury requirement, a plaintiff must demonstrate a less than significant, but more than *de minimis* physical injury. *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003). In *Mitchell*, the Third Circuit also found that § 1997e(e) did not apply to claims seeking injunctive or declaratory relief. *Id.* The Third Circuit has held that a prior physical injury is not required under the PLRA for nominal and punitive damages premised on the violation of a constitutional right. *Allah v. Al-Hafeez*, 226 F.3d 247, 252–53 (3d Cir. 2000).

In review of the amended complaint, the court agrees with Defendants that Plaintiff fails to allege any physical injury from the conduct of Defendants. (Doc. 28.) However, the court finds that Plaintiff's prayer for relief includes a request for punitive damages:

> WHEREFORE, plaintiff respectfully prays that this court enter judgment, granting plaintiff:
> 1. Compensatory damages in the amount of, Compensatory damages in the amount of, $150,000.00 against each defendant jointly and severally due to mental anguish.
> 2. Punitive damages in the amount of, $5,000.00 against each defendant.
> 3. Plaintiff's costs of this action.
> 4. Any other relief the court deems proper and equitable.

(Doc. 28, p. 10.) In accord with Third Circuit precedent, all requests for compensatory damages will be stricken. However, Plaintiff properly pleaded punitive damages so the claim cannot be decided on the issue of relief. The court will, therefore, address the merits of the remaining claims.

### C. All Equitable Relief was Rendered Moot By the Transfer to a New Facility.

Defendants also allege that since Plaintiff has been transferred to SCI-Frackville and is no longer at SCI-Huntingdon, all requests for equitable relief are moot. (Doc. 67, p. 5.)

"An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). However, such claims are not mooted when a challenged action is (1) too

9

short in duration "to be fully litigated prior to its cessation or expiration"; and (2) "there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again." *Id*. (quoting *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993)). Here, Plaintiff's allegations surrounding the interaction with Bicking and the misconducts do not meet these two exceptions. Therefore, the court finds that all requests for equitable relief were rendered moot by the transfer to SCI-Frackville.

### D. Judgment Will Be Granted in Defendants' Favor on All First Amendment Retaliation Claims.

Plaintiff's First amendment retaliation claims against Defendants Hammon, Frye, Grassmyer, and Spyker survived the 28 U.S.C. § 1915(e)(2)(B)(ii) screening. (Doc. 33.) In the amended complaint, Plaintiff alleges that not only that Defendants Hammon, Frye, Grassmyer, and Spyker retaliated against him, but that they entered into a conspiracy. (Doc. 28, pp. 4–6, 8–9.) Plaintiff alleges that Defendant Hammon's filing of the allegedly false misconduct against Plaintiff was done in retaliation for Plaintiff filing the PREA action against Bicking. (*Id*., p. 4.) Plaintiff also alleges that Defendant Frye filed an allegedly false misconduct report in retaliation for "exercising plaintiff's constitutional rights." (*Id*., p. 5.) Plaintiff alleges that Defendants Grassmyer and Spyker retaliated against him by being "bias[ed] in conducting the plaintiff's PREA investigation that ultimately resulted

in the plaintiff being negatively affected by the outcome of exercising plaintiff's constitutional right."  (*Id.*, p. 6.)

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts.  *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015).  A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell*, 318 F.3d at 530.  The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment.  *Fantone*, 780 F.3d at 191.

This court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity.  *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v.*

11

*Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity).

Defendants have submitted evidence in the form of Plaintiff's deposition that Defendants Hammon, Frye, Grassmyer, McCloskey, and Spyker were not the subject of any constitutionally protected activity on the part of Plaintiff at the time of the filing of the misconduct.  Defendants were not the subject of any civil complaint or grievances filed by Plaintiff prior to the misconducts.  (Doc. 66, ¶ 24, 25; Doc. 66-2, pp. 89, 91, 95, 98, 102.)  Defendants were also not the subject of the PREA complaint filed on January 16, 2024.  (Doc. 66, ¶ 29; Doc. 66-2, pp. 91–92; Doc. 66-6.)  Plaintiff has admitted these facts.  (Doc. 73, ¶ 29.)  Here, none of the Defendants were the subject of any constitutional activity.  Therefore, there is no causal connection to establish that the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action, and the court will grant judgment in favor of Defendants.

Because the retaliation claim cannot be established based on the undisputed facts, the conspiracy to retaliate claim also fails.  The court will likewise enter judgment in the favor of Defendants on this claim.

### E. Judgement Will Be Granted in Defendants' Favor on the Eighth Amendment Claim.

Plaintiff's Eighth Amendment claim against Defendant Hammon survived the 28 U.S.C. § 1915(e)(2)(B)(ii) screening. (Doc. 33.) Specifically, Plaintiff alleges that Defendant Hammon failed to protect him on January 16, 2020. (Doc. 28, p. 4.)

"A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (citations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.

The Supreme Court has found that an Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Id*. Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 (3d Cir. 2001). This deliberate indifference standard "is a subjective standard under *Farmer*–the prison official-defendant must actually have known or been

13

aware of the excessive risk to inmate safety." *Id.* Thus, "[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety." *Hamilton v. Leavy,* 117 F.3d 742, 747 (3d Cir. 1997) (emphasis added).

Here, Defendants have established through Plaintiff's deposition that Plaintiff knew of Bicking and had interacted with him in the library, but prior to January 16, 2020, Bicking had not threatened or physically attacked Plaintiff. (Doc. 66, ¶¶ 18–19; Doc. 66-2, pp. 18–19.) Plaintiff does not dispute these facts. (Doc. 73, ¶¶ 18–19.) Therefore, Plaintiff cannot establish that there was an excessive risk to his safety on January 16, 2020, let alone establish that Defendant Hammon had knowledge of such risk. The court will grant judgment in favor of Defendant Hammon on the Eighth Amendment claim for this reason.

## Conclusion

For the reasons discussed above, the court will grant Defendants' motion for summary judgment, grant judgment in favor of Defendants, and close the case.

An appropriate order follows.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: September 26, 2024